John Raymond **JORDY**, Appellant,

v.

**STATE** of Texas, State.

No. 2–97–076–CR.

Court of Appeals of Texas, Fort Worth.

May 7, 1998.

Law Offices of Gwinda L. Burns, Gwinda Burns, Fort Worth, for Appellant.

Bruce Isaacks, District Attorney, Kathleen Walsh, Assistant District Attorney, Denton, for Appellee.

Before DAY, DAUPHINOT, and HOLMAN, JJ.

## OPINION

DAUPHINOT, Justice.

A jury convicted Appellant John Raymond Jordy of felony driving while intoxicated ("DWI") and sentenced him to ten years'

confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant brings four points on appeal, challenging the sufficiency of the evidence and the trial court's evidentiary rulings. We affirm the trial court's judgment.

At Appellant's trial, Lewisville police officer Kendall Lynn, a paramedic, and two civilian witnesses testified to the following events occurring on August 19, 1995. Sunday Singh saw an older model Cadillac being driven recklessly at a high rate of speed collide with another car and then race away from the scene. Robert Wandell heard a crash and saw a Cadillac with a badly damaged front end speeding away, its driver not having stopped to check on the occupants of the car he had hit.

Appellant himself testified that he had an accident while driving a 1980 Cadillac that evening. He testified that he hit a car's rear end and drove away to report the accident. Wandell followed the Cadillac away from the scene. When the Cadillac stopped, Wandell recognized the driver getting out as someone with whom he worked, "John Jordy." Wandell observed Appellant walk away from the Cadillac, his gait characterized by weaving, bobbing, and almost falling down.

Near the scene of the accident, Lynn saw Appellant, who matched the police dispatcher's description of the suspect, walking on foot. Lynn immediately saw that Appellant was unsteady on his feet, swaying from side to side when he walked. Upon approaching Appellant, Lynn noticed that he had a strong odor of alcohol on his breath and his eyes were red and glassy.

Appellant did not have a driver's license with him, but verbally provided Lynn his name and date of birth. Lynn asked Appellant how much he had been drinking. Instead of answering the question, Appellant lay down on the ground and said he needed medical attention.

Lynn inquired about Appellant's injuries and then called for an ambulance because he was concerned that Appellant may have been suffering from a closed-head injury, and Lynn did not want Appellant to leave the scene if he did have such a serious injury. Lynn again asked how much Appellant had been drinking, and Appellant answered, "A lot." When the ambulance arrived, Appellant refused to go to the hospital.

He told one of the responding paramedics that he had drunk twelve beers. Lynn had not placed Appellant under arrest at this time. Appellant himself testified at trial that he had drunk a six-pack of beer that evening and that he had a half empty whiskey bottle and some empty beer cans in the car.

After Appellant refused transport to the hospital, Lynn tried to administer some field sobriety tests, but Appellant refused to perform them. Lynn formally arrested Appellant for public intoxication, believing his intoxication made him a danger to himself or to others. Lynn pointed out that even though he believed Appellant to have "lost the normal use of his mental and physical faculties" due to intoxication, he could not arrest Appellant for DWI because Lynn did not see Appellant operating a motor vehicle. After Lynn brought Appellant to the police station, another officer videotaped him. The jurors saw Appellant refuse a breath test on the tape and were also able to observe his drunken actions, demeanor, and voice.

In Appellant's first point, he argues that the trial court improperly admitted the following three statements he made before being advised of his constitutional [1] and statutory [2] right against self-incrimination:

● "I hope I haven't killed anyone";

●."Oh, gee, I pissed my pants"; and

● "A lot."

■ Police are required to advise someone interrogated while in custody of his right against self-incrimination regardless of whether he is under formal arrest.[3] Warn-

---

1. U.S. CONST. amend. V; TEX. CONST. art. I, § 10.

2. See TEX CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2) (Vernon Supp.1998).

3. See Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d, 714, 719 (1977); Melton v. State, 790 S.W.2d 322, 331 (Tex.Crim. App.1990) (citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966)); Wicker v. State, 740 S.W.2d 779,

ings are not required for those outside of custody questioned by the police.[4] Warnings are also not required for those in custody who volunteer statements not in response to police questions.[5] Codifying the United States Supreme Court holding in *Miranda v. Arizona,*[6] Code of Criminal Procedure article 38.22 provides that statements resulting from custodial interrogation are admissible only if the accused made them after being advised that: [7]

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used against him in court; (3) he has the right to have a lawyer present to advise him prior to and during any questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview at any time.[8]

██ The first two statements complained of by Appellant, "I hope I haven't killed anyone," and, "Oh, gee, I pissed my pants," could not have been the product of interrogation because they were not made in response to questioning by a police officer. Appellant simply volunteered the statements. The third statement, however, was made in re-sponse to an officer's question inquiring how much Appellant had drunk.

██ Since Appellant's statement, "A lot," was the result of interrogation, our inquiry must focus on whether he was in custody at the time of the questioning. The trial court found that he was not.[9] The amount of deference a reviewing court affords a trial court's fact findings is determined by which judicial actor is in a better position to decide the issue.[10]

When the findings are based on an evaluation of witnesses' credibility and demeanor, the appellate court should afford almost total deference to the trial court's fact findings.[11] The appellate court should afford the same amount of deference to the trial court's rulings on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor.[12] The appellate court may review de novo mixed questions of law and fact not turning on an evaluation of credibility and demeanor, such as whether an officer had probable cause to seize a suspect under the totality of the circumstances.[13] In such a case, the trial judge is not in an appreciably better position than the reviewing court to make that determination.[14]

In a recent decision, the United States Supreme Court held that, although great

786 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988).

4. *See Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719; *Wicker,* 740 S.W.2d at 786.

5. *See Granviel v. State,* 723 S.W.2d 141, 146 (Tex.Crim.App.1986) (citing *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726), *cert. denied,* 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987).

6. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07.

7. Tex.Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (Vernon Supp.1998).

8. Tex.Code Crim. Proc. Ann. art. 38.22, § 2(a) (Vernon 1979).

9. The trial judge failed to file the findings of fact and conclusions of law required by Tex.Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 1979). We abated this case to the trial court and ordered the trial judge to file them. Although he eventually did so, he concluded as a matter of law that he was not required to file findings of fact and conclusions of law. He is mistaken. *See Wicker,* 740 S.W.2d at 783–84.

10. *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex. Crim.App.1997) (citing *Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 451, 88 L.Ed.2d 405, 413 (1985)).

11. *See Guzman,* 955 S.W.2d at 87 (citing *Miller,* 474 U.S. at 114, 106 S.Ct. at 452, 88 L.Ed.2d at 413–14).

12. *See Guzman,* 955 S.W.2d at 89.

13. *See Guzman,* 955 S.W.2d at 87 (citing *Miller,* 474 U.S. at 114, 106 S.Ct. at 451, 88 L.Ed.2d at 413).

14. *See Guzman,* 955 S.W.2d at 87.

weight should be given to the inferences drawn by trial courts, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal.[15] The Court stated that, "the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles."[16] Because the facts are undisputed in this case, there are no questions of credibility or demeanor. The only question is one of law. Consequently, we shall determine de novo whether Appellant's statement, "A lot," was the product of custodial interrogation.

■ The United States Supreme Court defined custodial interrogation in *Miranda* as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[17] We do not base our determination of custody upon whether a police officer has spoken the words "arrest" or "in custody."[18] The court of criminal appeals has·historically utilized a four-factor test in determining whether someone is in custody.[19] The court recently discontinued this practice in *Dowthitt v. State,* however, in favor of determining custody "on an ad hoc basis, after considering all of the objective circumstances."[20]

As it applies to the facts of this case, the *Dowthitt* decision provides that the new test will be satisfied, and custody established, when: (1) an officer has probable cause to arrest a suspect and does not tell him that he is free to leave; (2) the officer manifests this knowledge to the suspect; and (3) a reasonable person in the suspect's position would

believe he is under restraint to the degree associated with an arrest.[21] A police officer witnessing someone committing a criminal offense has probable cause to arrest.[22] Having personally observed Appellant commit the offense of public intoxication, Lynn had probable cause to arrest him. Specifically, Lynn observed that Appellant was unsteady on his feet, had a strong odor of alcohol on his breath, and his eyes were red and glassy.[23]

Moreover, Lynn believed that Appellant's intoxication made him a danger to himself or others. Lynn did not tell Appellant he was free to leave. Lynn manifested to Appellant knowledge of probable cause to arrest him by asking how much he had drunk and attempting to administer field sobriety tests.

A reasonable person in this position would most certainly believe he is under restraint to the degree associated with an arrest. Consequently, we find that Appellant was in custody at the time he responded to Lynn's question. It was, therefore, error for the trial court to have admitted Appellant's statement, "A lot."

■ Having determined that the trial court committed error in admitting this statement, we must now determine if the error requires reversal. Because the improper admission of a statement in response to custodial interrogation implicates the Fifth Amendment to the United States Constitution and Article 1, Section 10, of the Texas Constitution, we conclude that the trial court's error in this case was constitutional in nature.[24] If an error is constitutional in nature, we must reverse unless we determine beyond a reasonable doubt that the error did

**15.** See *Ornelas v. United States,* 517 U.S. 690, 696–98, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911, 919 (1996).

**16.** *Id.* at 697, 116 S.Ct. at 1662, 134 L.Ed.2d at 919 (citing *Miller,* 474 U.S. at 114, 106 S.Ct. at 451, 88 L.Ed.2d at 405).

**17.** *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

**18.** See *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719.

**19.** See *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex.Crim.App.1996).

**20.** *Id.* at 254–55 (internal parentheses omitted).

**21.** *Id.* at 255.

**22.** See *State v. Skiles,* 938 S.W.2d 447, 453 (Tex. Crim.App.1997).

**23.** See Tex.Code Crim. Proc. Ann. art. 14.01(a) (Vernon 1977).

**24.** U.S. Const. amend. V; Tex. Const. art. I, § 10.

not contribute to the conviction or punishment.[25]

■ The improperly admitted statement went only to the issue of alcohol intoxication. Abundant evidence of Appellant's alcohol intoxication was admitted without objection. Because there was ample evidence from which the jury could have concluded that Appellant was intoxicated, we find beyond a reasonable doubt that the improperly admitted statement did not contribute to Appellant's conviction or punishment. We overrule Appellant's first point.

■ Appellant challenges the sufficiency of the evidence in his second and third points, although he does not state whether he is complaining of legal or factual insufficiency. Because he relies on *Jackson v. Virginia*,[26] we assume he challenges the legal sufficiency of the evidence and shall not address its factual sufficiency.[27] In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict.[28] We may not overturn the verdict unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[29] Appellant argues in his second point that there is insufficient evidence to support the jury's finding that he was driving a vehicle while intoxicated. We find the evidence of Appellant's driving a vehicle while intoxicated not only sufficient but overwhelming. We overrule Appellant's second point.

[9] Appellant argues in his third point that there is insufficient evidence to support the jury's finding that his February 13, 1989 DWI conviction in cause 98,400–B was final. The court admitted into evidence a copy of the judgment of Appellant's conviction and sentence filed in Cause No. 98,400–B. Additionally, Appellant himself testified that he was convicted of driving while intoxicated on February 13, 1989.

Appellant complains that his conviction on February 13, 1989 could not have been final because the trial court in that case issued an order on February 28, 1991 discharging him from probation, setting aside the verdict, permitting him to withdraw his guilty plea, dismissing the complaint and information, and releasing him from all penalties and disabilities resulting from the commission of the criminal offense to which he pleaded guilty and of which he was convicted. Although the order purports to have been made under the authority of article 42.13, section 7, of the Code of Criminal Procedure, the legislature repealed that section in 1985.[30] Because the order's language exactly tracks that of the 1991 version of article 42.12, section 23,[31] we assume that the trial judge believed 42.12, section 23, authorized him to discharge Appellant from probation, set aside the verdict, permit Appellant to withdraw his guilty plea, dismiss the complaint and information, and release Appellant from all penalties and disabilities resulting from the commission of the criminal offense to which he pleaded guilty and of which he was convicted. The former Article 42.12, section 23, generally permitted a trial court to take such action, but specifically excluded

25. *See* Tex.R.App. P. 44.2(a); *Brown v. State*, 960 S.W.2d 265, 271 (Tex.App.—Corpus Christi 1997, no pet.); *Raney v. State*, 958 S.W.2d 867, 873 (Tex.App.—Waco 1997, pet. filed).

26. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

27. *See Davila v. State*, 930 S.W.2d 641, 648 (Tex. App.—El Paso 1996, pet. ref'd).

28. *See Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

29. *See Emery v. State*, 881 S.W.2d 702, 705 (Tex. Crim.App.1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995).

30. Act of May 28, 1979, 66th Leg., R.S., ch. 654, § 1, 1979 Tex. Gen. Laws 1514, 1518–19 *repealed by* Act of May 21, 1985, 69th Leg., R.S., ch. 427, § 3, 1985 Tex. Gen. Laws 1531, 1555 (current version at Tex.Code Crim. Proc. Ann. art. 42.12, § 20 (Vernon Supp.1998)).

31. Act of May 29, 1989, 71st Leg., R.S., ch. 785, § 4.17, 1989 Tex. Gen. Laws 3471, 3516 *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 4.01, 1993 Tex. Gen. Laws 3586, 3739 (current version at Tex.Code Crim. Proc. Ann. art. 42.12, § 20 (Vernon Supp.1998)).

**534**

from its application a defendant on probation for DWI.

Because trial courts do not have general authority to dismiss criminal cases without the State's consent, any attempt to do so either under the court's general inherent powers or under the former article 42.12, section 23, is void,[32] "a complete nullity." [33] Appellant presented no evidence that the State consented to the dismissal of cause 98,400–B. Consequently, the trial court's order discharging Appellant from probation was void except to the extent that it discharged him from the obligations of probation. The order, therefore, had no effect on the finality of Appellant's conviction in cause 98,400–B. The evidence of Appellant's prior conviction was sufficient to support the jury's finding. We overrule Appellant's third point.

In his fourth point, Appellant complains of the trial court's refusal to admit into evidence the February 28, 1991 order. If a party fails to make a timely objection to the trial court's ruling, error is not preserved for appellate review and any complaint is waived.[34] When the trial court ruled that the exhibit would be admitted "for record purposes only," Appellant did not object. Because Appellant failed to object, we overrule his fourth point. Finding no reversible error, we affirm the trial court's judgment.

**32.** *See State v. Johnson,* 821 S.W.2d 609, 612 (Tex.Crim.App.1991).

**33.** *Id.* at 614 n. 9.

**34.** *See* Tex.R.App. P. 33.1(a)(1); *Taylor v. State,* 939 S.W.2d 148, 155 (Tex.Crim.App.1996).