COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-043-CR
 
  
JUAN 
GERMAN BARRON                                                       APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. INTRODUCTION
        In 
two issues, appellant Juan German Barron (“Barron”) appeals from his jury 
conviction of three counts of aggravated sexual assault. We affirm.
II. MOTION TO SUPPRESS
        In 
his first issue, Barron argues that the trial court erred in failing to suppress 
his written statement because the statement was a product of custodial 
interrogation, and the State did not comply with article 38.22 of the Texas Code 
of Criminal Procedure. See TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp. 2004). The 
State contends that the trial court did not err because Barron made his 
statements in a noncustodial setting; therefore article 38.22 was not 
applicable. We review the denial of a motion to suppress through a bifurcated 
standard of review, giving almost total deference to the trial court’s express 
or implied determination of historical facts and reviewing de novo the 
court’s application of the law to the facts. Carmouche v. State, 10 
S.W.3d 323, 327-28 (Tex. Crim. App. 2000).
        Voluntary, 
noncustodial statements are exempt from the requirements of article 38.22. See 
TEX. CODE 
CRIM. PROC. 
ANN. art. 38.22; Jordy v State, 969 
S.W.2d 528, 531 (Tex. App.—Fort Worth 1998, no pet.). “Custodial 
interrogation” has been defined by the courts as “questioning initiated by 
law enforcement after a person has been taken into custody or otherwise deprived 
of his freedom of action in any significant way.” Miranda v. Arizona, 
384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). In determining whether an 
individual was in custody, the ultimate inquiry is whether there was a formal 
arrest or restraint on the freedom of movement of the degree associated with a 
formal arrest. Stansbury v. California, 511 U.S. 318, 322, 114 S. Ct. 
1526, 1528-29 (1994). The reasonable person standard presupposes an innocent 
person. Florida v. Bostick, 501 U.S. 429, 438, 111 S. Ct. 2382, 2389 
(1991). Additionally, being the focus of a criminal investigation does not 
amount to being in custody. See Meek v. State, 790 S.W.2d 618, 620 (Tex. 
Crim. App. 1990). When the circumstances show that the individual acts upon the 
invitation or request of the police and there are no threats, express or 
implied, that he will be forcibly taken, then that person is not in custody. Dancy 
v. State, 728 S.W.2d 772, 778-79 (Tex. Crim. App. 1987).
        Here, 
the trial court conducted a hearing on Barron’s motion to suppress his oral 
and written statements. Amanda Dollar, a Child Protective Services (“CPS”) 
Investigator, and Detective Jeff Rogers of the Arlington Police Department 
testified for the State, and Barron testified for the defense. Dollar testified 
that after receiving a referral alleging Barron had sexually abused his 
step-daughter, she contacted Barron at his work and asked him to come into her 
office at the Alliance for Children[2] to discuss an 
investigation that he was a “big part of.” Barron agreed to talk to Dollar, 
and informed her that it would take him about two hours to get to her office.
        When 
Barron arrived, Dollar introduced herself and showed Barron to a first floor 
conference room. There, she explained that her job as a CPS investigator was to 
receive a referral and then talk to all parties involved about the allegations. 
Dollar testified that after she informed Barron that his step-daughter was 
alleging that she had been sexually abused, Barron agreed to speak with Dollar 
about the allegation. During their conversation, Barron never asked to leave the 
room, nor did he request an attorney.[3]  Dollar 
testified that had Barron asked to leave the room, she would have allowed him to 
do so.
        During 
the conversation, Barron admitted that after inspecting “some irritation on 
[his step-daughter’s] anal area,” he “rubbed his penis against” his 
step-daughter’s buttocks. Upon Barron’s admission, Dollar decided to go 
notify Detective Rogers, who had only been assigned to Barron’s case the 
previous day and who officed on the second floor of the Alliance for Children 
building. In Roger’s office, Dollar informed him that Barron had admitted 
committing the offense against the victim, and that Barron’s confession 
coincided with the complainant’s allegations. A couple of minutes later, 
Rogers and Dollar found Barron still seated in the conference room. Dollar 
introduced Barron to Rogers and then left the conference room and returned to 
her office.
        At 
the pre-trial hearing, Rogers testified that when he interviewed Barron he was 
dressed in civilian clothes but had his badge clipped to his belt. Rogers also 
testified that he read Barron his Miranda warnings and told Barron, 
“You don’t have to be here, you’re free to leave. I’m here to get your 
side of the story.”  According to Rogers, Barron agreed to waive his 
rights and speak to Rogers.  Rogers testified that Barron was not under 
arrest; if Barron had asked to leave, he could have left; and Barron never 
requested a lawyer during the interview. Rogers also testified that after Barron 
made several oral admissions about his relationship with the complainant, Rogers 
asked whether Barron would be willing to reduce his statement to writing.  
According to Rogers, Barron agreed, but asked Rogers to write the statement for 
him while he dictated.  Rogers testified that he recorded Barron’s 
statement, writing down what Barron said, pausing, reading what he had written, 
and making the changes Barron suggested. When they finished, Rogers re-read the 
statement to Barron, including the printed Miranda warning at the top, 
then handed it to Barron for his review.  Barron added several lines and 
made some other corrections; Rogers had him initial the beginning and the end of 
the statement and any changes that had been made.  Barron then placed his 
signature at the bottom of the statement and left the office. In total, Barron 
was at the office one-and-a-half to two hours. Barron was arrested a week later.
        At 
the pretrial hearing, Barron testified that he told Dollar he needed a lawyer 
several times. Likewise, he claimed that he told Rogers that he needed a lawyer, 
and Rogers told him that they needed to complete the statement, sign it, and 
then they could talk about getting a lawyer. According to Barron, Rogers did not 
write what Barron told him to write, and he signed the statement because Rogers 
told him to sign it. Barron also claimed that Rogers did not notify him of his 
rights under article 38.22.  Finally, Barron testified he felt like he had 
to stay in the conference room until they told him he could leave.
        At 
the conclusion of the hearing, the trial court granted Barron’s motion to 
suppress as to Barron’s oral statements to Dollar, but denied the motion as to 
Barron’s written statement. In its findings of fact, the trial court chose to 
reject Barron’s version of the facts, and found that the testimony of Dollar 
and Rogers was credible. See Carmouche, 10 S.W.3d at 327-38. In regard to 
Dollar, the trial court found that Barron voluntarily met with Dollar to discuss 
the allegations, never requested to terminate the interview, and never requested 
an attorney. In regards to Rogers, the trial court found that Rogers told Barron 
that he was free to leave and gave Barron the required warnings under art. 38.22 
and Miranda. Finally, the trial court found that while talking to Rogers, 
Barron never invoked his right to remain silent or terminate the interview, and 
that he signed the statement that Rogers wrote at his request. Under these 
circumstances, an innocent, reasonable person would not have felt restrained to 
the degree of a formal arrest. See Cagel v. State, 23 S.W.3d 590, 592 
(Tex. App.—Fort Worth 2000, pet. ref’d). Accordingly, Barron made his 
statements in a noncustodial setting and article 38.22 was not applicable. See 
TEX. CODE 
CRIM. PROC. 
ANN. art. 38.22; Jordy, 969 S.W.2d 
at 531. We overrule Barron’s first issue.
III. INEFFECTIVE ASSISTANCE OF 
COUNSEL
        In 
his second issue, Barron argues that his trial counsel rendered ineffective 
assistance of counsel in failing to move to suppress his written statement on 
the grounds that Barron invoked his right to counsel during the interviews with 
both Dollar and Rogers, notwithstanding their testimony that Barron never 
unequivocally invoked his right to counsel.
        We 
apply a two-pronged test to ineffective assistance of counsel claims. Strickland 
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson 
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, an appellant must 
show that his counsel's performance was deficient; second, an appellant must 
show the deficient performance prejudiced the defense. Strickland, 466 
U.S. at 687, 104 S. Ct. at 2064.
        In 
evaluating the effectiveness of counsel under the first prong, we look to the 
totality of the representation and the particular circumstances of each case. Thompson, 
9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under 
all the circumstances and prevailing professional norms at the time of the 
alleged error. Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065.  
“[C]ounsel is strongly presumed to have rendered adequate assistance and made 
all significant decisions in the exercise of reasonable professional 
judgment.”  Id. at 690, 104 S. Ct. at 2066.  An allegation of 
ineffective assistance must be firmly founded in the record, and the record must 
affirmatively demonstrate the alleged ineffectiveness.  Thompson, 9 
S.W.3d at 814.  Our scrutiny of counsel's performance must be highly 
deferential, and every effort must be made to eliminate the distorting effects 
of hindsight. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.
        The 
second prong of Strickland requires a showing that counsel's errors were 
so serious that they deprived the defendant of a fair trial, that is, a trial 
whose result is reliable.  Id. at 687, 104 S. Ct. at 2064. In other 
words, appellant must show there is a reasonable probability that, but for 
counsel's unprofessional errors, the result of the proceeding would have been 
different.  Id. at 694, 104 S. Ct. at 2068. A reasonable probability 
is a probability sufficient to undermine confidence in the outcome. Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of the 
proceeding whose result is being challenged. Id. at 697, 104 S. Ct. at 
2070.
        Here, 
the record does not reflect trial counsel’s reasoning for failing to raise the 
objection Barron now maintains should have been raised. In the absence of 
counsel’s reasoning, the record is insufficient to overcome the presumption 
that trial counsel’s conduct falls within the wide range of professional 
competent assistance. See Murphy v. State, 112 S.W.3d 592, 601 (Tex. 
Crim. App. 2003); Thompson, 9 S.W.3d at 814. Furthermore, in light of 
Dollar’s and Rogers’s testimony that Barron never unequivocally invoked his 
rights and our determination that Barron was not in custody, Barron has failed 
to establish that had his trial counsel objected on the grounds he now asserts, 
the trial court would have suppressed Barron’s written statement. See 
Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). Finally, in 
light of other evidence presented at trial, Barron failed to prove that but for 
counsel’s alleged ineffectiveness, the outcome of the proceeding would have 
been different.  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. 
Accordingly, we overrule Barron’s second issue.
IV. CONCLUSION
        Having 
overruled both of Barron’s issues on appeal, we affirm the trial court’s 
judgment.
 
 
   
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
 
PANEL 
A:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
August 5, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The Alliance for Children building houses CPS offices, Cooks Children’s 
Hospital offices, and Arlington Police Department detective’s offices.
3.  
Dollar testified that Barron did ask her “if he needed an attorney,” to 
which Dollar replied, “if you want to seek an attorney, that’s something you 
need to decide.”