BARRON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-043-CR

JUAN GERMAN BARRON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. I
NTRODUCTION

In two issues, appellant Juan German Barron (“Barron”) appeals from his jury conviction of three counts of aggravated sexual assault
. 
 We affirm.

II. M
OTION
 
TO
 S
UPPRESS
 

In his first issue, Barron argues that the trial court erred in failing to suppress 
his written statement because the statement was a product of custodial interrogation, and the State did not comply with article 38.22 of the Texas Code of Criminal Procedure
. 
 See 
T
EX
. C
ODE
 C
RIM
. P
ROC
. A
NN
. art. 38.22 (Vernon Supp. 2004).
 
 The State contends that the trial court did not err because Barron made his statements in a noncustodial setting; therefore article 38.22 was not applicable.  We review the denial of a motion to suppress through a bifurcated standard of review, giving almost total deference to the trial court’s express or implied determination of historical facts and reviewing 
de novo
 the court’s application of the law to the facts.  
Carmouche v. State
, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000).

Voluntary, noncustodial statements are exempt from the requirements of article 38.22.  
See 
T
EX
. C
ODE
 C
RIM
. P
ROC
. A
NN
. art. 38.22; 
Jordy v State
, 969 S.W.2d 528, 531 (Tex. App.—Fort Worth 1998, no pet.).  “Custodial interrogation” has been defined by the courts as “questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.”  
Miranda v. Arizona
, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).  In determining whether an individual was in custody, the ultimate inquiry is whether there was a formal arrest or restraint on the freedom of movement of the degree associated with a formal arrest.  
Stansbury v. California
, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528-29 (1994).  The reasonable person standard presupposes an innocent person.  
Florida v. Bostick
, 501 U.S. 429, 438, 111 S. Ct. 2382, 2389 (1991).  Additionally, being the focus of a criminal investigation does not amount to being in custody.  
See Meek v. State
, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990).  When the circumstances show that the individual acts upon the invitation or request of the police and there are no threats, express or implied, that he will be forcibly taken, then that person is not in custody.  
Dancy v. State
, 728 S.W.2d 772, 778-79 (Tex. Crim. App. 1987).

Here, the trial court conducted a hearing on Barron’s motion to suppress his oral and written statements.  Amanda Dollar, a Child Protective Services (“CPS”) Investigator, and Detective Jeff Rogers of the Arlington Police Department testified for the State, and Barron testified for the defense.  Dollar testified that after receiving a referral alleging Barron had sexually abused his step-daughter, she contacted Barron at his work and asked him to come into her office at the Alliance for Children
(footnote: 2) to discuss an investigation that he was a “big part of.”  Barron agreed to talk to Dollar, and informed her that it would take him about two hours to get to her office. 

When Barron arrived, Dollar introduced herself and showed Barron to a first floor conference room.  There, she explained that her job as a CPS investigator was to receive a referral and then talk to all parties involved about the allegations.  Dollar testified that after she informed Barron that his step-daughter was alleging that she had been sexually abused, Barron agreed to speak with Dollar about the allegation.  During their conversation, Barron never asked to leave the room, nor did he request an attorney.
(footnote: 3)  Dollar testified that had Barron asked to leave the room, she would have allowed him to do so.

During the conversation, Barron admitted that after inspecting “some irritation on [his step-daughter’s] anal area,” he “rubbed his penis against” his step-daughter’s buttocks.  Upon Barron’s admission, Dollar decided to go notify Detective Rogers, who had only been assigned to Barron’s case the previous day and who officed on the second floor of the Alliance for Children building. In Roger’s office, Dollar informed him that Barron had admitted committing the offense against the victim, and that Barron’s confession coincided with the complainant’s allegations.  A couple of minutes later, Rogers and Dollar found Barron still seated in the conference room.  Dollar introduced Barron to Rogers and then left the conference room and returned to her office.

At the pre-trial hearing, Rogers testified that when he interviewed Barron he was dressed in civilian clothes but had his badge clipped to his belt.  Rogers also testified that he read Barron his 
Miranda
 warnings and told Barron, “You don’t have to be here, you’re free to leave.  I’m here to get your side of the story.”  According to Rogers, Barron agreed to waive his rights and speak to Rogers.  Rogers testified that Barron was not under arrest; if Barron had asked to leave, he could have left; and Barron never requested a lawyer during the interview.  Rogers also testified that after Barron made several oral admissions about his relationship with the complainant, Rogers asked whether Barron would be willing to reduce his statement to writing.  According to Rogers, Barron agreed, but asked Rogers to write the statement for him while he dictated.  Rogers testified that he recorded Barron’s statement, writing down what Barron said, pausing, reading what he had written, and making the changes Barron suggested.  When they finished, Rogers re-read the statement to Barron, including the printed 
Miranda 
warning at the top, then handed it to Barron for his review.  Barron added several lines and made some other corrections; Rogers had him initial the beginning and the end of the statement and any changes that had been made.  Barron then placed his signature at the bottom of the statement and left the office.  In total, Barron was at the office one-and-a-half to two hours.  Barron was arrested a week later. 

At the pretrial hearing, Barron testified that he told Dollar he needed a lawyer several times.  Likewise, he claimed that he told Rogers that he needed a lawyer, and Rogers told him that they needed to complete the statement, sign it, and then they could talk about getting a lawyer.  According to Barron, Rogers did not write what Barron told him to write, and he signed the statement because Rogers told him to sign it.  Barron also claimed that Rogers did not notify him of his rights under article 38.22.  Finally, Barron testified he felt like he had to stay in the conference room until they told him he could leave.

At the conclusion of the hearing, the trial court granted Barron’s motion to suppress as to Barron’s oral statements to Dollar, but denied the motion as to Barron’s written statement.  In its findings of fact, the trial court chose to reject Barron’s version of the facts, and found that the testimony of Dollar and Rogers was credible.  
See Carmouche
, 10 S.W.3d at 327-38.  
In regard to Dollar, the trial court found that Barron voluntarily met with Dollar to discuss the allegations, never requested to terminate the interview, and never requested an attorney.  In regards to Rogers, the trial court found that Rogers told Barron that he was free to leave and
 gave Barron the required warnings under art. 38.22 and 
Miranda
.  Finally, the trial court found that while talking to Rogers, Barron never invoked his right to remain silent or terminate the interview, and that he signed the statement that Rogers wrote at his request.  Under these circumstances, an innocent, reasonable person would not have felt restrained to the degree of a formal arrest.  
See Cagel v. State
, 23 S.W.3d 590, 592 (Tex. App.—Fort Worth 2000, pet. ref’d). 
 Accordingly, Barron made his statements in a noncustodial setting and article 38.22 was not applicable.
  
See 
T
EX
. C
ODE
 C
RIM
. P
ROC
. A
NN
. art. 38.22; 
Jordy
, 969 S.W.2d at 531.  
We overrule Barron’s first issue.

III.  I
NEFFECTIVE 
A
SSISTANCE
 
OF
 C
OUNSEL

In his second issue, B
arron argues that his trial counsel rendered ineffective assistance of counsel in failing to move to suppress his written statement on the grounds that Barron invoked his right to counsel during the interviews with both Dollar and Rogers, notwithstanding their testimony that Barron never unequivocally invoked his right to counsel.

We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, an appellant must show that his counsel's performance was deficient; second, an appellant must show the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064. 

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id.
 at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 814.  Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.  
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

The second prong of 
Strickland
 requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, that is, a trial whose result is reliable.  
Id.
 at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

Here, the record does not reflect trial counsel’s reasoning for failing to raise the objection Barron now maintains should have been raised.  In the absence of counsel’s reasoning, the record is insufficient to overcome the presumption that trial counsel’s conduct falls within the wide range of professional competent assistance.  
See Murphy v. State
, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003); 
Thompson
, 9 S.W.3d at 814.  Furthermore, in light of Dollar’s and Rogers’s testimony that Barron never unequivocally invoked his rights and our determination that Barron was not in custody, Barron has failed to establish that had his trial counsel objected on the grounds he now asserts, the trial court would have suppressed Barron’s written statement.  
See Jackson v. State
, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).  Finally, in light of other evidence presented at trial, Barron failed to prove that but for counsel’s alleged ineffectiveness, the outcome of the proceeding would have been different.  
Strickland
, 466 U.S. at 694, 104 S. Ct. at 2068.
  Accordingly, we overrule Barron’s second issue.

IV.  C
ONCLUSION 

Having overruled both of Barron’s issues on appeal, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: August 5, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The Alliance for Children building houses CPS offices, Cooks Children’s Hospital offices, and Arlington Police Department detective’s offices.

3:
Dollar testified that Barron did ask her “if he needed an attorney,” to which Dollar replied, “if you want to seek an attorney, that’s something you need to decide.”