COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-426-CR

 

 

MICHELLE LOUISE ZYNDA                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Michelle Louise
Zynda appeals from her conviction for driving while intoxicated (ADWI@).  In two points, she challenges the trial court=s decision to deny her motion to suppress.[2]  We affirm.








BACKGROUND

Appellant was charged with
DWI and moved to suppress any evidence obtained prior to her arrest.  The City of Keller police officer who stopped
Appellant, Craig Berry, testified at the suppression hearing, as did Appellant.

Officer Berry testified that
he was working DWI patrol on October 20, 2005, and stopped Appellant around
1:45 a.m. when he saw her vehicle traveling 78 miles per hour in a 55‑mile‑per‑hour
zone.  He testified that he turned on his
red and blue traffic lights, she pulled over, and then he approached her from
the vehicle=s passenger
side, for officer safety, as they were on the highway.  He testified that he shined his flashlight
directly at Appellant for almost a full minute before having to knock on the
window to get her attention.








Officer Berry testified that
when Appellant rolled down the window, he smelled a strong odor of alcoholic
beverage coming from the vehicle and observed that her eyes appeared bloodshot
and watery.  He requested her license and
proof of insurance.  He testified that
she produced an expired insurance card and became emotional as she fumbled
through her papers trying to find a current one.  When he asked her if she had consumed any
alcohol, she responded that she had had two beers.

Officer Berry testified that
after Appellant gave him contradictory answers to questions about where she was
coming from, where she was going, and why she was speeding, he asked her to
step out of the vehicle and told her that he wanted to check her eyes.  He used the horizontal gaze nystagmus (AHGN@) standard
field sobriety test and then also administered the walk‑and‑turn
and one‑legged stand tests.  He
testified that he did not tell Appellant that she had a choice with regard to
performing the tests, but that he Acertainly didn=t force her
to,@ and that he did not warn her that the tests could be searches or
evidence to be used later.  Officer Berry
testified that each test inferred that Appellant was intoxicated and that he
arrested Appellant at the completion of the tests, around 2:10 a.m., took her
to jail, read her the statutory warning, requested a breath specimen, read the Miranda
warnings to her,[3]
and asked if she would answer some questions. 
He testified that she consented to the breath specimen and to the
questions.








Appellant testified that when
Officer Berry asked her to get out of her vehicle and perform the sobriety
tests, she did not feel as though she had a choice and felt compelled to do
them.  She testified that if she had
known that the tests could be used against her as evidence, she would not have
done them, and that she felt like she had to talk with Officer Berry because Ahe was right there saying things and telling me to do things.@  She testified that Officer
Berry only had his flashlight out and never drew his gun on her, did not
threaten her with pepper spray or a baton, and did not ever say Aif you don=t do these
tests, I=m going to arrest you for DWI.@

The trial court asked
Appellant if she ever asked Officer Berry, ADo I have to do these?@ with regard to the field sobriety tests.  She replied, AYes, I did, sir,@ and told
him that Officer Berry told her that she had to. Appellant also testified that
she did not feel that Officer Berry suspected her of DWI until right before he
told her that she was under arrest.  She
did not dispute the fact that Officer Berry pulled her over for speeding.








The only other evidence introduced
at the suppression hearing was the videotape from Officer Berry=s patrol car.  The videotape
reveals that Appellant was pulled over at 1:48 a.m. and corresponds with
Officer Berry=s testimony
about having to knock on the passenger side window and requesting her license
and insurance.  Although Appellant is
barely audible from inside her vehicle, she told Officer Berry four times that
she would never let her insurance lapse, continuously apologized, and gave
inconsistent responses about where she was coming from and when she left.  At 1:57 a.m., Appellant told Officer Berry
that she had had two beers, one at 2 p.m. and one at 10 p.m.  He walked to his vehicle, and two minutes later,
returned to her and asked her to step out of the car.  The videotape does not support Appellant=s testimony that she asked Officer Berry whether she had to do the
field sobriety tests or that he told her she had to do them.  Appellant did complain of being cold several
timesCshe was wearing a sleeveless shirt and had taken off her shoesCand she did say at one point that she was scared.  Officer Berry told her that there was no
reason to be scared.

By 2:08, the three tests were
over and Officer Berry placed Appellant under arrest and into the back seat of
his patrol car.  He and his partner
searched her vehicle while she sat in the patrol car, apologizing, praying, and
screaming.[4]  The officers searched her vehicle from 2:09
a.m. to 2:19 a.m. and then re-entered the patrol car, seatbelted Appellant, and
drove her to jail.  They did not ask her
any questions during this time.[5]








After the trial court denied
her motion to suppress, Appellant pled nolo contendere.  Pursuant to a plea agreement, Appellant
retained the right to appeal the trial court=s ruling on her suppression motion. 
The trial court found her guilty, assessed punishment at an $800 fine
and 120 days=
confinement, and suspended imposition of the sentence by placing her on
community supervision for a period of eighteen months.

SUPPRESSION








In her first point, Appellant
essentially asserts that the Fourth Amendment, article 1, section 9 of the
Texas Constitution, and articles 1.06 and 38.23 of the code of criminal
procedure[6]
apply to searches for signs of intoxication through the use of standard field
sobriety tests.[7]  She also brings a number of other,
somewhat-related, constitutional arguments under this point.  In her second point, she asserts that her
statements were used against her in violation of Miranda because she was
subjected to a custodial interrogation without receiving the Miranda
warnings.

Standard Of Review

Appellant requests that we
review her entire complaint de novo, applying the higher standard required for
determinations of probable cause.  We
decline this invitation and review the trial court=s ruling on her motion to suppress under the traditional bifurcated
standard of review.  Carmouche v.
State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).








In reviewing the trial court=s decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101, 108‑09
(Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

Fourth Amendment & Other
Constitutional Claims








A detention, as opposed to an
arrest, may be justified on less than probable cause if a person is reasonably
suspected of criminal activity based on specific, articulable facts.  See Terry v. Ohio, 392 U.S. 1, 21-22, 88
S. Ct. 1868, 1880 (1968); Carmouche, 10 S.W.3d at 328.  An officer conducts a lawful temporary
detention when he has reasonable suspicion to believe that an individual is
violating the law.  Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  Reasonable suspicion exists when, based on the
totality of the circumstances, the officer has specific, articulable facts that
when combined with rational inferences from those facts, would lead him to
reasonably conclude that a particular person is, has been, or soon will be
engaged in criminal activity.  Id.
at 492.  This is an objective standard
that disregards any subjective intent of the officer making the stop and looks
solely to whether an objective basis for the stop exists.  Id. at 492.  Speeding is a traffic violation for
which an officer may lawfully stop and detain a person.[8]  See Tex.
Transp. Code Ann. ' 545.351
(Vernon 1999); Walter v. State, 28 S.W.3d 538, 542 (Tex. Crim. App.
2000) (stating that the decision to stop an automobile is reasonable where the
police have probable cause to believe that a traffic violation has occurred).

We have recently decided
against Appellant on her Fourth and Fourteenth Amendment claims and her claims
under the Texas Constitution.  See
Arthur, 216 S.W.3d at 54-56.  In Arthur,
we held that a person=s rights
under the Fourth Amendment and under article 1, section 9 of the Texas
Constitution are not violated by an initial detention and subsequent request to
perform field sobriety tests as long as the detention is supported by specific,
articulable facts and carefully tailored to its underlying justification.  See id. at 55-56.








Here, Officer Berry testified
that he observed Appellant driving 78 miles per hour in a 55-mile-per-hour zone
and pulled her over.  After he stopped
her and approached her vehicle, he noted that it took almost a minute for her
to register his presence, even with his flashlight shined on her, and that he
had to knock on the vehicle=s window to get her attention. 
During their initial conversation, he testified that he smelled alcohol
and noticed her bloodshot and watery eyes, that she became flustered while
searching for a current insurance card and that she gave him contradictory
answers about her reason for speeding.[9]

Collectively, these specific,
articulable facts were sufficient to give Officer Berry reasonable suspicion to
detain Appellant further to conduct field sobriety tests.  Arthur, 216 S.W.3d at 55.  Conducting the field sobriety tests was the
least intrusive means that Officer Berry could employ to determine whether
Appellant was driving while intoxicated. 
See id. at 55.  We
therefore hold that Appellant=s rights under the Fourth Amendment and article 1, section 9 of the
Texas Constitution were not violated when Officer Berry temporarily detained
her and administered the field sobriety tests. 
See id. at 55-56.








The constitutional
protections applicable to persons under arrest for a criminal offense
are different from those applicable to persons merely detained based
upon reasonable suspicion.  Compare
Miranda, 384 U.S. at 475, 86 S. Ct. at 1628 (addressing post-arrest,
pretrial scenarios with regard to the Fifth Amendment privilege against
compulsory self‑incrimination and custodial interrogation) and Brewer
v. Williams, 430 U.S. 387, 398, 97 S. Ct. 1232, 1239 (1977) (addressing
attachment of the Sixth Amendment right to counsel at the initiation of formal
adversarial proceedings) with Berkemer v. McCarty, 468 U.S. 420, 440,
442, 104 S. Ct. 3138, 3150‑51 (1984) (holding that a motorist who was
stopped and subjected by a patrolman to a modest number of questions and
sobriety tests in a location visible to passing motorists was not taken into
custody for Miranda purposes). 
Therefore, even assuming that Appellant had stated a proper due process
or equal protection violation under the Fourteenth Amendment, she was not
subjected to such a violation under these facts.[10]  See, e.g., County of Sacramento v. Lewis,
523 U.S. 833, 843, 118 S. Ct. 1708, 1715 (1998) (stating that substantive due
process analysis is inappropriate if a claim is covered by the Fourth
Amendment).








Because Appellant=s detention and the field sobriety tests administered to her did not
constitute an unreasonable search under the Fourth Amendment, article 1,
section 9 of the Texas Constitution, or articles 1.06 or 38.23 of the code of
criminal procedure, and did not implicate any equal protection or due process
rights, we overrule Appellant=s first point.

Fifth Amendment Miranda Rights

In her second point,
Appellant argues that the trial court erred by not suppressing Aany and all testimonial evidence obtained at the scene@ of her warrantless arrest, in violation of both the U.S. and Texas
Constitutions.  See U.S. Const. amends. V, XIV; Tex. Const. art. I, '' 9-10; Tex. Code Crim.
Proc. Ann. arts. 1.05, 38.22. 
Specifically, she contends that she was Ain police custody when incriminating evidence was elicited@ and so should have been offered full Miranda protection.

However, Appellant did not
sufficiently inform the trial court or this court of the statements of which
she complains.  See Tex. R. App. P. 33.1; Mendez,
138 S.W.3d 334, 341 (Tex. Crim. App. 2004); Mosley, 983 S.W.2d at
265.  Although Appellant argued in her
written suppression motion that Aany alleged statements made at the scene@ were inadmissible, and asserted in her memorandum in support of the
motion that Aany
statements at the scene made in response to police questioning,@ should be suppressed she did not describe any of these statements.








She also did not describe any
of these statements to the trial court during her suppression hearing except
for, AI said, I=m cold,@ and ADo I have
to?@ in response to the trial court=s question of whether she asked the officer if she had to do the field
sobriety tests.  She testified about what
Officer Berry said to her, stating,@He asked me questions prior to reading me [Miranda],@ but did not go into what the questions were or what her answers had
been; she testified about his instructions with regard to the tests and how she
felt.  She also testified that she did
not feel she was suspected of DWI Auntil right about the end [of the tests], before he said, >You=re under
arrest.=@

Officer Berry testified that
he asked Appellant for her license and insurance and then asked her whether she
had consumed any alcohol after making observations about her eyes, the odor
coming from the vehicle, and her general demeanor.  The only statement made by Appellant that he
testified about was that she told him that she had had two beers.[11]  Cf. Jordy v. State,








969 S.W.2d 528, 530 (Tex. App.CFort Worth 1998, no pet.) (reciting and analyzing the three specific
statements complained of by the DWI appellant as improperly admitted in
violation of his constitutional and statutory rights against
self-incrimination).








Even assuming that Appellant
was in custody when Officer Berry initially stopped her, or, as Appellant
testified, Awhen he
pulled me out of my car and had me do tests behind my vehicle, right next to
him,@ the Fifth Amendment applies only to incriminating testimonial
evidence.  See Williams v. State,
116 S.W.3d 788, 791 (Tex. Crim. App. 2003). 
Because Appellant has failed to direct either the trial court or this
court to any specific statements that incriminate her of DWI,[12]
she has failed to preserve anything in this point for our review.  See Tex.
R. App. P. 33.1 (a)(1); Mosley, 983 S.W.2d at 265; See also
Gassaway v. State, 957 S.W.2d 48, 51 (Tex. Crim. App. 1997) (stating that a
recitation of the alphabet and counting backwards are not testimonial in nature
because these communications are physical evidence of the functioning of the
DWI suspect=s mental and
physical faculties; any indication of intoxication comes from the suspect=s demeanor, manner in which she speaks, and whether she has the mental
ability to perform the tests correctly). 
We overrule Appellant=s second point.

CONCLUSION

Having overruled both of
Appellant=s points, we
affirm the judgment of the trial court. 

 

PER CURIAM

PANEL F: 
HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  July 26, 2007











[1]See Tex. R.
App. P. 47.4.





[2]Appellant=s points are nearly identical to
the points raised by the appellants (also represented by Appellant=s counsel) and overruled by this
court in O=Shea v. State, No. 02-06-00256-CR, 2007 WL
1168454, at *2-4 (Tex. App.CFort Worth April 19, 2007, no pet.) (mem. op.) (not
designated for publication); Arthur v. State, 216 S.W.3d 50, 53‑58
(Tex. App.CFort Worth 2007, no pet.); Jordan
v. State, No. 02‑05‑00364‑CR, 2006 WL 2310531, at *2-6
(Tex. App.CFort Worth August 10, 2006, no
pet.) (mem. op.) (not designated for publication).  Likewise, our disposition of Appellant=s case tracks these previous
opinions.





[3]See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602
(1966).





[4]Appellant screamed, muttered, and
cried the word Ano@ approximately forty times while
the officers searched her vehicle.  Her
other remarks, made while both officers were outside searching her vehicle,
ranged from begging, Alet me go,@ to comments like, Ayou=re an ass.@





[5]Appellant did ask questions.  She asked them where they were taking
her.  In response to their answer, Ajail,@ she asked where the jail was, and
wanted her cell phone.  The only
discernible sound for the remainder of the ten-minute trip to jail is Appellant=s sniffling. 





[6]Article 1.06 parallels the Fourth
Amendment with regard to searches and seizures. 
See Tex. Code Crim. Proc.
Ann. art. 1.06 (Vernon 2005). 
Article 38.23 states that no evidence obtained in violation of any
provisions of the state or federal constitutions shall be admitted into
evidence against the accused on the trial of any criminal case.  See id. art. 38.23.





[7]Appellant contends that she was
unreasonably searched for signs of intoxication without a warrant when she was
stopped and ordered to perform the field sobriety tests without her
consent.  She claims that she had a
reasonable expectation of privacy in her body that was violated with regard to
her choice to move or not to move.





[8]An officer has probable cause to
stop and arrest a driver if he observes the driver commit a traffic
offense.  See State v. Gray, 158
S.W.3d 465, 469-70 (Tex. Crim. App. 2005); see Ballman, 157 S.W.3d at
70.  If the offense is speeding, the
officer shall issue a written notice to appear if the person makes a written
promise to appear in court as provided by section 543.005.  See Tex.
Transp. Code Ann. ' 543.004(a) (Vernon Supp.
2006).





[9]He also asked her whether she had
been drinking and she told him that she had had two beers, one at 2:00 p.m. and
one at 10:00 p.m.





[10]Appellant claims the right to
privacy as her fundamental right under her equal protection claim, but cites us
to no legal authority to support her claim to Athe right to privacy in [her]
person from unreasonable searches and seizures@ as a fundamental right.  Therefore, to the extent her claim is not
fully addressed above, we overrule this subpoint, and her First Amendment
subpoint, as inadequately briefed.  See
Tex. R. App. P. 38.1(h); Tong
v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert. denied,
532 U.S. 1053 (2001); Mosley v. State, 983 S.W.2d 249, 256 (Tex. Crim.
App. 1998) (op. on reh=g), cert. denied, 526 U.S.
1070 (1999). 





[11]The videotape reveals that at 1:57
a.m., Appellant said she had one beer at 2 p.m. and the other at 10 p.m.  She made this statement and then told him
that she would keep looking for a current insurance card.  By that time, she had been looking for a
current insurance card for five minutes. 
He walked to his vehicle and then returned two minutes later and asked
her to step out of her car.





[12]And, after reviewing the videotape,
we discovered no responses by Appellant that would tend to incriminate her of
DWI during the field sobriety tests or after her arrest and prior to receiving
her Miranda warnings at the jail. 
If Appellant had actually had only two beers that day, the last one
consumed almost four hours before Officer Berry stopped her, we do not believe
this statement would have tended to incriminate her of DWI.  Appellant later admitted, at the jail after
waiving her right to remain silent, that she had been drinking Cosmopolitans
that evening and was intoxicated when she was stopped.