COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-030-CR

 

 

HILARY ARTHUR                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellant Hilary Arthur
appeals her conviction for driving while intoxicated.  After the trial court denied Appellant=s motions to suppress, she waived her right to a jury trial and
entered a plea of guilty.  The trial
court found Appellant guilty, assessed her punishment at a fine of $550 and 90
days in the county jail, and suspended imposition of the sentence by placing
her on community supervision for a period of twenty-four months.  In two points, Appellant asserts that the
trial court erred by failing to suppress physical and testimonial evidence
obtained at the scene of her warrantless arrest.[1]  We affirm.

MOTION TO SUPPRESS

In her first point, Appellant
argues that she was subject to an unreasonable search because she was required
to perform field sobriety tests.  She
contends that the Fourth Amendment applies to searches for signs of
intoxication through the use of field sobriety tests.  In her second point, she asserts that her
statements were used against her in violation of Miranda because she was
subjected to a custodial interrogation.

1.  Evidence Presented








Officer Craig Berry of the
Keller DWI Unit testified that he was on patrol at 1:33 a.m. on June 18, 2005,
when he observed a car rapidly accelerate away from a traffic light and drift
over the pavement=s white
line.  He checked the vehicle=s speed with his radar; it registered forty-five miles per hour as the
vehicle left a thirty-five miles-per-hour zone and entered a forty
miles-per-hour zone.  Officer Berry
followed the car and observed it drift onto the right shoulder six times and
drift over the left traffic line at least twice.  Officer Berry testified that both the vehicle=s excessive speed and failure to drive in a single lane were traffic
violations. 

Officer Berry initiated a
traffic stop.  Appellant was the vehicle=s sole occupant.  Officer Berry
approached the car on the passenger side and shone his flashlight through the
passenger-side window; Appellant did not acknowledge his presence for nearly
half a minute, and then only when Officer Berry knocked on the window.  When Appellant rolled down her window,
Officer Berry smelled a strong odor of alcohol coming from the car=s interior.  He asked Appellant
if she had consumed any alcohol that night, and she alternatively told him that
she had consumed one glass of wine and that she couldn=t remember how much she had consumed. 
Officer Berry testified that Appellant=s speech was loud and, occasionally, moderately slurred.  Her eyes were bloodshot and watery. 








Officer Berry asked Appellant
to step out of the car, and he administered 
three standardized field sobriety tests. 
Appellant exhibited six of six Aclues@ of
intoxication on the horizontal gaze nystagmus test, five clues on the
walk-and-turn test, and three clues on the one-leg-stand test.  Officer Berry then administered a portable
breath test; the breath-test device reported Appellant=s blood-alcohol level as .17. 
Officer Berry arrested Appellant and took her to the Keller Police
Department, where he read her the Miranda warnings.[2]  

Appellant testified that when
Officer Berry began questioning her regarding how much she had to drink that
evening and asked her step out of the car, she did not feel like she was free
to leave.  She testified that she would
not have performed the field sobriety tests if Officer Berry had told her that
she had the option not to perform them. 

2.  Standard Of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004);
Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543. 

3.  Physical Evidence 








Appellant argues that the
Fourth Amendment and article one, section nine of the Texas Constitution apply
to searches for signs of intoxication through the use of field sobriety tests.[3]  See U.S.
Const. amend. IV; Tex. Const.
Art. I, ' 9.  Although she mostly complains in her first point of a violation of her
rights as guaranteed by the Fourth Amendment, she also briefly argues that
field sobriety tests are testimonial in nature and require the administration
of Miranda warnings in order to protect her privilege against self-incrimination
under the Fifth Amendment.  








The Fifth Amendment applies
only to incriminating evidence that is testimonial in nature.  Williams v. State, 116 S.W.3d 788, 791
(Tex. Crim. App. 2003).  In order to be
testimonial, the communication must itself, explicitly or implicitly, relate a
factual assertion or disclose information. 
Id.  The court of criminal
appeals has held that sobriety tests yield physical evidence of a suspect=s mental and physical faculties, and thus, the results are not
testimonial evidence that implicates Miranda.  Gassaway v. State, 957 S.W.2d 48, 51
(Tex. Crim. App. 1997) (holding that field sobriety tests do not violate the
privilege against self-incrimination). 
Specifically, the court of criminal appeals has reasoned that field
sobriety tests are not testimonial because their results do not create Aan express or implied assertion of fact or belief.@  Id. at 50.

Appellant also claims that
the trial court erred in failing to suppress testimony concerning the field
sobriety tests pursuant to code of criminal procedure article 38.22.  See Tex.
Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2006).  However, no Texas law requires that a suspect
be warned, or that consent be obtained, before the administration of a field
sobriety test.  Oguntope v. State,
177 S.W.3d 435, 438 (Tex. App.CHouston [1st Dist.] 2005, no pet.) (stating that while transportation
code sections 724.012, 724.013, and 724.015 require statutory warnings of
consequences of consent or failure to consent to a breathalyzer test, no
statute requires warnings prior to the administration of field sobriety tests);
Martin v. State, 97 S.W.3d 718, 720 (Tex. App.CWaco 2003, pet. ref=d) (holding that a field sobriety test was not illegally obtained
because, unlike the statutory mandate that a breathalyzer test may not be
administered if the subject refuses to submit to the taking of the specimen, no
such statute applies to field sobriety tests).













Appellant=s Fourth Amendment complaint relates to the right to be secure  in her person from unreasonable searches or
seizures.  She asserts that she was
subjected to an unreasonable search and seizure when Officer Berry asked her to
perform the field sobriety tests.  Both
the Fourth Amendment and article one, section nine of the Texas Constitution
guarantee individuals the right to be free from unreasonable searches and
seizures.  See U.S. Const. amend. IV; Tex. Const. art. I, ' 9.  The Fourth Amendment does
not forbid all searches and seizures, but only unreasonable searches and
seizures.  Davis v. State, 947
S.W.2d 240, 242 (Tex. Crim. App. 1997). 
Law enforcement officers may stop and briefly detain persons suspected
of criminal activity on less information than is constitutionally required for
probable cause to arrest.  Terry v.
Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); Davis, 947 S.W.2d
at 244.  To justify the intrusion, the
officer must have specific, articulable facts which, in light of his experience
and personal knowledge, together with inferences from those facts, would
reasonably warrant the intrusion on the freedom of the citizen detained for
further investigation.  Garza v. State,
771 S.W.2d 549, 558 (Tex. Crim. App. 1989). 
A police officer may briefly stop a suspicious individual in order to
determine his identity or to maintain the status quo momentarily while
obtaining more information.  Hoag v.
State, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).  The officer must have a reasonable suspicion
that some activity out of the ordinary is occurring or has occurred, some
suggestion to connect the detained person with the unusual activity, and some
indication that the activity is related to a crime.  Id.

The scope of the detention
must be carefully tailored to its underlying justification.  Florida v. Royer, 460 U.S. 491, 500,
103 S. Ct. 1319, 1325-26 (1983).  The
scope of the intrusion permitted will vary to some extent with the particular
facts and circumstances of each case.  Id.  The scope of the detention must be temporary
and last no longer than necessary to effectuate the purposes of the stop.  Id. 
Furthermore, the investigative methods employed should be the least
intrusive means reasonably available to verify or dispel the officer=s suspicions within a short period of time.  Id. 








Here, Officer Berry observed
Appellant=s car
weaving out of its lane of travel and speeding. 
These articulable facts, combined with Appellant=s admission that she had been drinking, were sufficient to give
Officer Berry a reasonable suspicion to detain Appellant further to administer
field sobriety tests.  See id.  The administration of the field sobriety
tests was the least intrusive means by which Officer Berry could verify or
dispel his suspicion that Appellant had been driving while intoxicated.  See id.  This minimal intrusion into Appellant=s personal freedom was reasonable under the circumstances.  See id.  Accordingly, we hold that Appellant=s Fourth Amendment rights and her rights under article one, section
nine, of the Texas Constitution were not violated by Officer Berry=s temporary detention of Appellant and his request that she perform
field sobriety tests.

Appellant further argues that
allowing police to order DWI suspects to perform the standard field sobriety
tests violates the Fourteenth Amendment=s Equal Protection Clause because the tests violate DWI suspects= rights under the Fourth Amendment and article I, section 9 of the
Texas while the rights of persons suspected of other crimes are not likewise
violated.  See U.S. Const. amend. XIV.  Because we have already determined that the
field sobriety tests did not violate Appellant=s Fourth Amendment and article I, section 9 rights, we likewise hold
that they did not violate her rights under the Equal Protection Clause.

We overrule Appellant=s first point. 

4.  Testimonial Evidence 








In her second point,
Appellant contends that the trial court erred in denying her motion to suppress
the testimonial evidence that she alleges was obtained in violation of Miranda
because she was subjected to a custodial interrogation.  Appellant argues that when Officer Berry
asked her where she had been and whether she had been drinking, she was in
custody; thus, her statements should be suppressed because the officers had not
given her Miranda warnings. 
Citing Dowthitt v. State, 931 S.W.2d 244 (Tex. Crim. App. 1996),
and Jordy v. State, 969 S.W.2d 528 (Tex. App.CFort Worth, no pet.), Appellant argues that she was in custody because
the officers had probable cause to arrest her prior to the questioning and
because a reasonable person in her position would have believed that she was
under arrest or was not free to leave; thus, the statements she made to Officer
Berry should have been suppressed.

The need for Miranda
warnings arises when a person has been subjected to a custodial
interrogation.  Miranda, 384 U.S.
at 444, 86 S. Ct. at 1612. Article 38.22 of the Texas Code of Criminal
Procedure generally precludes the use of statements that result from custodial
interrogation absent compliance with its procedural safeguards.  Tex.
Code Crim. Proc. Ann. art. 38.22, ' 2.  If a statement is not the
result of a custodial interrogation, neither Miranda nor article 38.22
requires its suppression.  See Miranda,
384 U.S. at 444, 86 S. Ct. at 1612; Galloway v. State, 778 S.W.2d 110,
112 (Tex. App.CHouston
[14th Dist.] 1989, no pet.).








Custodial interrogation is
questioning initiated by law enforcement officers after a person has been taken
into custody or otherwise deprived of her freedom of action in any significant
way.  Miranda, 384 U.S. at 444, 86
S. Ct. at 1612.  A person held for an
investigative detention is not in custody. 
Dowthitt, 931 S.W.2d at 254. 
A person is in custody only if, under the circumstances, a reasonable
person would believe that his freedom of movement was restrained to the degree
associated with a formal arrest.  Id.  Persons temporarily detained pursuant to
traffic stops are not in custody for the purposes of Miranda.  Berkemer v. McCarty, 468 U.S. 420,
440, 104 S. Ct. 3138, 3150 (1984).  In Berkemer,
the Supreme Court determined that a motorist who was stopped for weaving on the
road, subjected to a modest number of questions by a patrolman, and who
performed a balancing test at a location visible to passing motorists, was not
taken into custody for purposes of Miranda.  Miranda, 384 U.S. at 442, 104 S. Ct.
at 3151.








The court of criminal appeals
adopted the Berkemer analysis in State v. Stevenson, 958
S.W.2d 824, 827 (Tex. Crim. App. 1997). 
In determining whether a noncustodial encounter has escalated into
custodial interrogation, the court of criminal appeals referred to four factors
discussed in Dowthitt, 931 S.W.2d at 254.  Stevenson, 958 S.W.2d at 826.  The factors for determining when a
noncustodial interrogation escalates into a custodial interrogation include the
following: (1) when the suspect is physically deprived of his freedom of action
in any significant way, (2) when law enforcement officers tell a suspect that
he cannot leave, (3) when law enforcement officers create a situation that
would lead a reasonable person to believe that his freedom of movement has been
significantly restricted, and (4) when there is probable cause to arrest and
law enforcement officers do not tell the suspect that he is free to leave.  Dowthitt, 931 S.W.2d at
255.  In the first, second, and third
situations, the restrictions upon freedom of movement must amount to the degree
associated with an arrest as opposed to an investigative detention.  Id. 
With regard to the fourth scenario, the officers= knowledge of probable cause must be manifested to the suspect.  Id. 

In holding that the appellant=s statements in Stevenson were admissible, the court of
criminal appeals held that the investigation was no more intrusive than in Berkemer,
and even if the appellant had become the focus of a DWI investigation, that
fact alone would not give rise to custody. 
Stevenson, 958 S.W.2d at 829. 
The court further noted that the existence of probable cause to arrest
did not distinguish the case from Berkemer, in which the officer
possessed probable cause to arrest after the suspect failed the sobriety
test.  Id.








Jordy held that the appellant was subjected to a custodial interrogation
following a traffic accident when, in response to the officer=s question regarding how much he had to drink, he stated, AA lot.@  969 S.W.2d at 531-32.  In Jordy, the appellant had lain down
on the ground and the officer had called an ambulance before asking the
appellant how much he had to drink.  Id.  In  Alford
v. State, this court reversed a DWI conviction because the appellant=s statement that he had consumed six beers was made in the absence of Miranda
warnings, but the appellant made this statement after he had been handcuffed
and placed on the ground.  22 S.W.3d 669,
672 (Tex. App.CFort Worth
2000, pet. ref=d).  Both of these cases present additional
circumstances  showing that the
questioning had occurred beyond the investigatory stage.  Lewis v. State, 72 S.W.3d 704, 713
(Tex. App.CFort Worth
2002, pet. ref=d). 

Here, Officer Berry observed
Appellant drifting in and out of her lane of travel and exceeding the posted
speed limits.  When he stopped her and
approached her vehicle, she was unresponsive as he shone a flashlight into the
car.  The car=s interior smelled of alcohol, Appellant=s eyes were bloodshot, and her speech was slurred.   These circumstances were enough to vest the
officer with reasonable suspicion to detain Appellant and further investigate
the possibility of her involvement in the criminal act of driving while
intoxicated.  Powell v. State, 5
S.W.3d 369, 377 (Tex. App.CTexarkana 1999, pet. ref=d) (holding that an officer may continue the detention after an
initial stop if he develops reasonable suspicion to believe that the detainee
was engaged in criminal activity); see State v. Brabson, 899 S.W.2d 741,
749 (Tex. App.CDallas
1995), aff'd, 976 S.W.2d 182 (Tex. Crim. App. 1998) (holding that
reasonable suspicion to detain arose when the suspect honked his horn
excessively and emitted a strong odor of alcohol).








We hold that Appellant=s statements were not the product of a custodial interrogation, but
were merely the result of an investigative detention.  Therefore, the statements are admissible even
in the absence of a Miranda warning and the warnings articulated in code
of criminal procedure section 38.22.  See
Stevenson, 958 S.W.2d at 829. 
Accordingly, we hold that the trial court did not err in denying
Appellant=s motion to
suppress.  We overrule Appellant=s second point.

CONCLUSION 

Having overruled Appellant=s two points, we affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  January 25, 2007











[1]Appellant=s
points are nearly identical to the points raised by the appellant (who was also
represented by Appellant=s
counsel) and overruled by this court in Jordan v. State, No.
02-05-00364-CR, 2006 WL 2310531 (Tex. App.CFort Worth August 10, 2006,
no pet.) (mem. op.) (not designated for publication).  Likewise, our disposition of Appellant=s
case tracks our opinion in Jordan.





[2] See
Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).





[3]The
State argues that Appellant waived her first point because her complaint on
appeal does not comport with her argument in the trial court.  See Heidelberg v. State, 144 S.W.3d
535, 537 (Tex. Crim. App. 2004) (holding complaint made on appeal must comport
with the complaint made in the trial court or the error is forfeited).  The focus of Appellant=s
argument at the suppression hearing was somewhat different from the focus of
her argument on appeal, but we will consider the merits of her first point out
of an abundance of caution and in the interest of justice.