COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-426-CR

MICHELLE LOUISE ZYNDA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Michelle Louise Zynda appeals from her conviction for driving while intoxicated (“DWI”).  In two points, she challenges the trial court’s decision to deny her motion to suppress.
(footnote: 2)  We affirm.

BACKGROUND

Appellant was charged with DWI and moved to suppress any evidence obtained prior to her arrest
.  The City of Keller police officer who stopped Appellant, Craig Berry, testified at the suppression hearing, as did Appellant.

Officer Berry testified that he was working DWI patrol on October 20, 2005, and stopped Appellant around 1:45 a.m. when he saw her vehicle traveling 78 miles per hour in a 55-mile-per-hour zone.  He testified that he turned on his red and blue traffic lights, she pulled over, and then he approached her from the vehicle’s passenger side, for officer safety, as they were on the highway.  He testified that he shined his flashlight directly at Appellant for almost a full minute before having to knock on the window to get her attention.

Officer Berry testified that when Appellant rolled down the window, he smelled a strong odor of alcoholic beverage coming from the vehicle and observed that her eyes appeared bloodshot and watery.  He requested her license and proof of insurance.  He testified that she produced an expired insurance card and became emotional as she fumbled through her papers trying to find a current one.  When he asked her if she had consumed any alcohol, she responded that she had had two beers.

Officer Berry testified that after Appellant gave him contradictory answers to questions about where she was coming from, where she was going, and why she was speeding, he asked her to step out of the vehicle and told her that he wanted to check her eyes.  He used the horizontal gaze nystagmus (“HGN”) standard field sobriety test and then also administered the walk-and-turn and one-legged stand tests.  He testified that he did not tell Appellant that she had a choice with regard to performing the tests, but that he “certainly didn’t force her to,” and that he did not warn her that the tests could be searches or evidence to be used later.  Officer Berry testified that each test inferred that Appellant was intoxicated and that he arrested Appellant at the completion of the tests, around 2:10 a.m., took her to jail, read her the statutory warning, requested a breath specimen, read the 
Miranda
 warnings to her,
(footnote: 3) and asked if she would answer some questions.  He testified that she consented to the breath specimen and to the questions.

Appellant testified that when Officer Berry asked her to get out of her vehicle and perform the sobriety tests, she did not feel as though she had a choice and felt compelled to do them.  She testified that if she had known that the tests could be used against her as evidence, she would not have done them, and that she felt like she had to talk with Officer Berry because “he was right there saying things and telling me to do things.”  She testified that Officer Berry only had his flashlight out and never drew his gun on her, did not threaten her with pepper spray or a baton, and did not ever say “if you don’t do these tests, I’m going to arrest you for DWI.”

The trial court asked Appellant if she ever asked Officer Berry, “Do I have to do these?” with regard to the field sobriety tests.  She replied, “Yes, I did, sir,” and told him that Officer Berry told her that she had to. Appellant also testified that she did not feel that Officer Berry suspected her of DWI until right before he told her that she was under arrest.  She did not dispute the fact that Officer Berry pulled her over for speeding.

The only other evidence introduced at the suppression hearing was the videotape from Officer Berry’s patrol car.  The videotape reveals that Appellant was pulled over at 1:48 a.m. and corresponds with Officer Berry’s testimony about having to knock on the passenger side window and requesting her license and insurance.  Although Appellant is barely audible from inside her vehicle, she told Officer Berry four times that she would never let her insurance lapse, continuously apologized, and gave inconsistent responses about where she was coming from and when she left.  At 1:57 a.m., Appellant told Officer Berry that she had had two beers, one at 2 p.m. and one at 10 p.m.  He walked to his vehicle, and two minutes later, returned to her and asked her to step out of the car.  The videotape does not support Appellant’s testimony that she asked Officer Berry whether she had to do the field sobriety tests or that he told her she had to do them.  Appellant did complain of being cold several times—she was wearing a sleeveless shirt and had taken off her shoes—and she did say at one point that she was scared.  Officer Berry told her that there was no reason to be scared.

By 2:08, the three tests were over and Officer Berry placed Appellant under arrest and into the back seat of his patrol car.  He and his partner searched her vehicle while she sat in the patrol car, apologizing, praying, and screaming.
(footnote: 4)  The officers searched her vehicle from 2:09 a.m. to 2:19 a.m. and then re-entered the patrol car, seatbelted Appellant, and drove her to jail.  They did not ask her any questions during this time.
(footnote: 5)
 After the trial court denied her motion to suppress, Appellant pled nolo contendere.  Pursuant to a plea agreement, Appellant retained the right to appeal the trial court’s ruling on her suppression motion.  The trial court found her guilty, assessed punishment at an $800 fine and 120 days’ confinement, and suspended imposition of the sentence by placing her on community supervision for a period of eighteen months.

SUPPRESSION

In her first point, Appellant essentially asserts that the Fourth Amendment, article 1, section 9 of the Texas Constitution, and articles 1.06 and 38.23 of the code of criminal procedure
(footnote: 6) apply to searches for signs of intoxication through the use of standard field sobriety tests.
(footnote: 7)  She also brings a number of other, somewhat-related, constitutional arguments under this point.  
In her second point, she asserts that her statements were used against her in violation of 
Miranda
 because she was subjected to a custodial interrogation without receiving the 
Miranda
 warnings.

Standard Of Review

Appellant requests that we review her entire complaint de novo, applying the higher standard required for determinations of probable cause.  We decline this invitation and review the trial court’s ruling on her motion to suppress under the traditional bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

Fourth Amendment & Other Constitutional Claims

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.  
See Terry v. Ohio
, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880 (1968); 
Carmouche
, 10 S.W.3d at 328.  An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law.  
Ford v. State
, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)
. 
 Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. 
 Id
. at 492.  This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.  
Id
. at 492.
  
Speeding is a traffic violation for which an officer may lawfully stop and detain a person.
(footnote: 8)  
See
 
Tex. Transp. Code Ann
. § 545.351 (Vernon 1999); 
Walter v. State
, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (stating that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred)
.

We have recently decided against Appellant on her Fourth and Fourteenth Amendment claims and her claims under the Texas Constitution.  
See Arthur
, 216 S.W.3d at 54-56.  In 
Arthur
, we held that a person’s rights under the Fourth Amendment and under article 1, section 9 of the Texas Constitution are not violated by an initial detention and subsequent request to perform field sobriety tests as long as the detention is supported by specific, articulable facts and carefully tailored to its underlying justification.  
See id. 
at 55-56.

Here, Officer Berry testified that he observed Appellant driving 78 miles per hour in a 55-mile-per-hour zone and pulled her over.  After he stopped her and approached her vehicle, he noted that it took almost a minute for her to register his presence, even with his flashlight shined on her, and that he had to knock on the vehicle’s window to get her attention.  During their initial conversation, he testified that he smelled alcohol and noticed her bloodshot and watery eyes, that she became flustered while searching for a current insurance card and that she gave him contradictory answers about her reason for speeding.
(footnote: 9)
 Collectively, these specific, articulable facts were sufficient to give Officer Berry reasonable suspicion to detain Appellant further to conduct field sobriety tests.  
Arthur
, 216 S.W.3d at 55.  Conducting the field sobriety tests was the least intrusive means that Officer Berry could employ to determine whether Appellant was driving while intoxicated.  
See id. 
at 55.  We therefore hold that Appellant’s rights under the Fourth Amendment and article 1, section 9 of the Texas Constitution were not violated when Officer Berry temporarily detained her and administered the field sobriety tests.  
See id. 
at 55-56.

The constitutional protections applicable to persons 
under arrest 
for a criminal offense are different from those applicable to persons merely 
detained
 based upon reasonable suspicion.  
Compare Miranda
, 384 U.S. at 475, 86 S. Ct. at 1628 (addressing post-arrest, pretrial scenarios with regard to the Fifth Amendment privilege against compulsory self-incrimination and custodial interrogation) 
and
 
Brewer v. Williams
, 430 U.S. 387, 398, 97 S. Ct. 1232, 1239 (1977) (addressing attachment of the Sixth Amendment right to counsel at the initiation of formal adversarial proceedings) 
with Berkemer v. McCarty
, 468 U.S. 420, 440, 442, 104 S. Ct. 3138, 3150-51 (1984) (holding that a motorist who was stopped and subjected by a patrolman to a modest number of questions and sobriety tests in a location visible to passing motorists was not taken into custody for 
Miranda
 purposes).  Therefore, even assuming that Appellant had stated a proper due process or equal protection violation under the Fourteenth Amendment, she was not subjected to such a violation under these facts.
(footnote: 10)  
See, e.g., County of Sacramento v. Lewis
, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715 (1998) (stating that substantive due process analysis is inappropriate if a claim is covered by the Fourth Amendment).

Because Appellant’s detention and the field sobriety tests administered to her did not constitute an unreasonable search under the Fourth Amendment, article 1, section 9 of the Texas Constitution, or articles 1.06 or 38.23 of the code of criminal procedure, and did not implicate any equal protection or due process rights, we overrule Appellant’s first point.

Fifth Amendment Miranda Rights

In her second point, Appellant argues that the trial court erred by not suppressing “any and all testimonial evidence obtained at the scene” of her warrantless arrest, in violation of both the U.S. and Texas Constitutions.  
See
 
U.S. Const
. amends. V, XIV; 
Tex. Const
. art. I, §§ 9-10; 
Tex. Code Crim. Proc. Ann
. arts. 1.05, 38.22.  Specifically, she contends that she was “in police custody when incriminating evidence was elicited” and so should have been offered full 
Miranda 
protection.

However, Appellant did not sufficiently inform the trial court or this court of the statements of which she complains.  
See 
Tex. R. App. P
. 33.1; 
Mendez
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); 
Mosley
, 983 S.W.2d at 265
.  Although Appellant argued in her written suppression motion that “any alleged statements made at the scene” were inadmissible, and asserted in her memorandum in support of the motion that “any statements at the scene made in response to police questioning,” should be suppressed she did not describe any of these statements.

She also did not describe any of these statements to the trial court during her suppression hearing except for, “I said, I’m cold,” and “Do I have to?” in response to the trial court’s question of whether she asked the officer if she had to do the field sobriety tests.  She testified about what Officer Berry said to her, stating,”He asked me questions prior to reading me [
Miranda
],” but did not go into what the questions were or what her answers had been; she testified about his instructions with regard to the tests and how she felt.  She also testified that she did not feel she was suspected of DWI “until right about the end [of the tests], before he said, ‘You’re under arrest.’”

Officer Berry testified that he asked Appellant for her license and insurance and then asked her whether she had consumed any alcohol after making observations about her eyes, the odor coming from the vehicle, and her general demeanor.  The only statement made by Appellant that he testified about was that she told him that she had had two beers.
(footnote: 11)  
Cf. Jordy v. State
,

969 S.W.2d 528, 530 (Tex. App.—Fort Worth 1998, no pet.) (reciting and analyzing the three specific statements complained of by the DWI appellant as improperly admitted in violation of his constitutional and statutory rights against self-incrimination).

Even assuming that Appellant was in custody when Officer Berry initially stopped her, or, as Appellant testified, “when he pulled me out of my car and had me do tests behind my vehicle, right next to him,” the Fifth Amendment applies only to incriminating testimonial evidence.  
See Williams v. State
, 116 S.W.3d 788, 791 (Tex. Crim. App. 2003).  Because Appellant has failed to direct either the trial court or this court to any specific statements that incriminate her of DWI,
(footnote: 12) she has failed to preserve anything in this point for our review.  
See 
Tex. R. App. P.
 33.1 (a)(1); 
Mosley
, 983 S.W.2d at 265; 
See also Gassaway v. State
, 957 S.W.2d 48, 51 (Tex. Crim. App. 1997) (stating that a recitation of the alphabet and counting backwards are not testimonial in nature because these communications are physical evidence of the functioning of the DWI suspect’s mental and physical faculties; any indication of intoxication comes from the suspect’s demeanor, manner in which she speaks, and whether she has the mental ability to perform the tests correctly).  We overrule Appellant’s second point.

CONCLUSION

Having overruled both of Appellant’s points, we affirm the judgment of the trial court. 

PER CURIAM

PANEL F:  HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  July 26, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Appellant’s points are nearly identical to the points raised by the appellants (also represented by Appellant’s counsel) and overruled by this court in 
O’Shea v. State
, No. 02-06-00256-CR, 2007 WL 1168454, at *2-4 (Tex. App.—Fort Worth April 19, 2007, no pet.) (mem. op.) (not designated for publication); 
Arthur v. State
, 216 S.W.3d 50, 53-58 (Tex. App.—Fort Worth 2007, no pet.); 
Jordan v. State
, No. 02-05-00364-CR, 2006 WL 2310531, at *2-6 (Tex. App.—Fort Worth August 10, 2006, no pet.) (mem. op.) (not designated for publication).  Likewise, our disposition of Appellant’s case tracks these previous opinions.

3:
See Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).

4:
Appellant screamed, muttered, and cried the word “no” approximately forty times while the officers searched her vehicle.  Her other remarks, made while both officers were outside searching her vehicle, ranged from begging, “let me go,” to comments like, “you’re an ass.”

5:
Appellant did ask questions.  She asked them where they were taking her.  In response to their answer, “jail,” she asked where the jail was, and wanted her cell phone.  The only discernible sound for the remainder of the ten-minute trip to jail is Appellant’s sniffling. 

6:
Article 1.06 parallels the Fourth Amendment with regard to searches and seizures.  
See
 
Tex. Code Crim. Proc. Ann. 
art. 1.06 (Vernon 2005).  Article 38.23 states that no evidence obtained in violation of any provisions of the state or federal constitutions shall be admitted into evidence against the accused on the trial of any criminal case.  
See id. 
art. 38.23.

7:
Appellant contends that she was unreasonably searched for signs of intoxication without a warrant when she was stopped and ordered to perform the field sobriety tests without her consent.  She claims that she had a reasonable expectation of privacy in her body that was violated with regard to her choice to move or not to move.

8:
An officer has probable cause to stop and arrest a driver if he observes the driver commit a traffic offense.  
See State v. Gray
, 158 S.W.3d 465, 469-70 (Tex. Crim. App. 2005)
; 
see Ballman
, 157 S.W.3d at 70.  If the offense is speeding, the officer shall issue a written notice to appear if the person makes a written promise to appear in court as provided by section 543.005.  
See
 
Tex. Transp. Code Ann. 
§ 543.004(a) (Vernon Supp. 2006).

9:
He also asked her whether she had been drinking and she told him that she had had two beers, one at 2:00 p.m. and one at 10:00 p.m.

10:
Appellant claims the right to privacy as her fundamental right under her equal protection claim, but cites us to no legal authority to support her claim to “the right to privacy in [her] person from unreasonable searches and seizures” as a fundamental right.  Therefore, to the extent her claim is not fully addressed above, we overrule this subpoint, and her First Amendment subpoint, as inadequately briefed.  
See 
Tex. R. App. P
. 38.1(h); 
Tong v. State
, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 1053 (2001); 
Mosley v. State
, 983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999)
.
 

11:
The videotape reveals that at 1:57 a.m., Appellant said she had one beer at 2 p.m. and the other at 10 p.m.  She made this statement and then told him that she would keep looking for a current insurance card.  By that time, she had been looking for a current insurance card for five minutes.  He walked to his vehicle and then returned two minutes later and asked her to step out of her car.

12:
And, after reviewing the videotape, we discovered no responses by Appellant that would tend to incriminate her of DWI during the field sobriety tests or after her arrest and prior to receiving her 
Miranda
 warnings at the jail.  If Appellant had actually had only two beers that day, the last one consumed almost four hours before Officer Berry stopped her, we do not believe this statement would have tended to incriminate her of DWI.  Appellant later admitted, at the jail after waiving her right to remain silent, that she had been drinking Cosmopolitans that evening and was intoxicated when she was stopped.